DECISION
{¶ 1} Appellant, Angela Davey, appeals from two judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, overruling objections to and adopting two magistrate's decisions which granted permanent custody of appellant's five minor children to Franklin County Children Services ("FCCS") for purposes of adoption.[1]
 {¶ 2} On June 23, 1999, FCCS filed a complaint alleging that Timothy Swisher, born March 15, 1995, Robert Swisher, born May 23, 1996, David Swisher, born July 15, 1997 and Elizabeth Swisher, born October 28, 1998 were neglected and dependent children. In particular, the complaint alleged that FCCS first opened a case file on the family on April 12, 1999. On that date, the children were found in appellant's home in the care of an 18-year-old babysitter. The house was filled with garbage, including dog feces. The children were filthy and had a strong odor about them. Robert had impetigo on his face, lesions all over his body, and an open sore on his head. David had severe diaper rash and an infected toe. Both David and Robert had head lice and feces caked to their buttocks. The children were removed and placed with a maternal aunt. The aunt signed a safety plan agreeing that appellant would have only supervised contact with the children. The safety plan was violated on June 22, 1999, when the children were discovered at the home of appellant's boyfriend. The complaint further alleged that appellant had alcohol and drug problems dating back to 1998. On the same day, the Franklin County Public Defender was appointed as the children's guardian ad litem. FCCS was granted temporary custody of the children with authority to place them in foster care.
 {¶ 3} Following an August 2, 1999 uncontested adjudicatory hearing on FCCS's complaint, a magistrate issued a decision finding the children to be dependent minors as defined in R.C. 2151.04(C) and dismissing the neglect cause of action. Concluding that residence in appellant's home would be contrary to the children's welfare because the circumstances giving rise to FCCS's complaint had not been alleviated, the magistrate temporarily committed the children to the custody of FCCS until further order of the court. The magistrate ordered appellant to submit to a psychological evaluation to assess her parenting skills and to complete any recommendations made therein. By judgment entry filed the same day, the trial court adopted the magistrate's decision.
 {¶ 4} A case plan developed by FCCS directed that appellant attend visits with the children, complete parenting classes and employ what was learned in the classes to her interactions with the children, maintain employment, complete a drug and alcohol assessment and follow recommendations including the completion of random urine screens, complete a mental health assessment and comply with recommendations made therein, including individual counseling, and maintain suitable and independent housing.
 {¶ 5} On July 26, 2000, FCCS filed a motion for permanent custody pursuant to R.C. 2151.413, seeking custody of the children under R.C.2151.414(B)(1).
 {¶ 6} In the interval between FCCS's filing of the motion for permanent custody and the hearing on that motion, appellant gave birth to another child, Evelyn R. Swisher, on January 3, 2001. FCCS obtained emergency custody of Evelyn on January 4, 2001. On December 13, 2001, FCCS filed a complaint alleging that Evelyn was a dependent child. The complaint alleged that appellant received no prenatal care during her pregnancy and had no provisions to care for the child. The complaint further alleged that on December 4, 2000, appellant tested positive for marijuana and submitted a urine screen on June 20, 2000 positive for marijuana and cocaine. The complaint further alleged that appellant had no independent housing and had failed to attend individual counseling as recommended in a psychological evaluation. FCCS requested permanent custody of Evelyn for purposes of adoption.
 {¶ 7} On December 14, 2001, the Franklin County Public Defender was appointed as guardian ad litem and FCCS was granted temporary custody of Evelyn.
 {¶ 8} Following a contested adjudicatory hearing on FCCS's complaint held over three days in September 2001 and three days in February 2002, the magistrate issued a decision finding Evelyn to be a dependent minor as defined in R.C. 2151.04(C).
 {¶ 9} On March 4 and 5, 2002, a hearing was held on FCCS's request for permanent custody of all five children. The parties stipulated that in addition to the testimony adduced at the March 4 and 5, 2002 hearing, appellant's testimony from the dependency hearing concerning Evelyn would be considered in the permanent custody action.
 {¶ 10} Appellant testified that she had lived in several different locations since April 1999, sometimes independently and sometimes with friends or relatives. At the time of the hearing, she lived with her sister, her sister's husband, and her sister's son in a three-bedroom house. She testified that if she were reunited with her children, the children would share one bedroom.
 {¶ 11} Appellant testified that she did not use drugs or alcohol. Although she admitted that she had not provided a urine screen since January 2001, she explained that she told her caseworker that she would submit further screens if the caseworker would "do her job." (Sept. 10, 2001 dependency hearing, 103.) She also stated that she did not provide many screens because she did not like people watching her while she went to the bathroom. Over objection, appellant admitted that a urine screen she provided in December 2000 tested positive for marijuana; however, she denied smoking marijuana and attributed the positive result to being around others who were smoking marijuana.
 {¶ 12} Appellant denied having mental health problems; however, she admitted that the case plan required her to submit to a psychological evaluation and attend counseling if recommended. She attended the psychological evaluation and, pursuant to the results of the evaluation, was directed to attend individual counseling. She stated that she attended only the intake session concerning her individual counseling because she did not always have transportation to the sessions and because she and the counselor did not communicate well regarding scheduling future sessions. She admitted that she did not attempt to independently obtain counseling elsewhere because her work schedule prohibited her from attending counseling. She also testified that she felt it was her caseworker's responsibility to provide her with the names and telephone numbers of other counselors. Although her caseworker scheduled family counseling for her and the children, she attended only a few of the sessions, and the counseling was ultimately terminated due to her lack of participation. Appellant explained that she stopped attending the sessions only after the caseworker told her that the children were not going to attend future sessions.
 {¶ 13} Regarding employment, appellant testified that she worked as a waitress at Dan's Drive-In from 1994 to August 2001, when she left as a result of a dispute with her employer. After August 2001, she was unemployed briefly as a result of her pregnancy, but eventually obtained employment through a temporary agency. She resumed employment with Dan's Drive-In a few days prior to the permanent custody hearing.
 {¶ 14} With regard to her parenting skills, appellant testified that she completed two sets of parenting classes. She further stated that she attended the majority of her scheduled visits with the children. During those visits, she played with the children, read to them, and employed appropriate disciplinary techniques learned in the parenting classes. She further testified that she and the children were affectionate with one another.
 {¶ 15} Appellant testified that she wanted her children returned to her and felt she had substantially completed the case plan. In addition, she testified that FCCS had not cooperated in assisting her completion of the case plan.
 {¶ 16} Emily Ledvinka testified that she had been the family's caseworker since April 12, 1999, when the children were removed from appellant's home. Ledvinka developed the case plan and thereafter discussed it with appellant several times.
 {¶ 17} Regarding housing, Ledvinka corroborated appellant's testimony that appellant lived in numerous places after April 1999. She further testified that appellant did not attend an appointment Ledvinka scheduled for her regarding low-income housing. She also testified that appellant did not have appropriate housing at the time Evelyn was born, and corroborated appellant's testimony that, at the time of the hearing, she was living with her sister and her sister's family in a three-bedroom house.
 {¶ 18} With regard to appellant's individual counseling, Ledvinka testified that she provided appellant with the names of prospective counseling agencies and bus passes to attend counseling sessions, but appellant never consistently attended the counseling sessions. Ledvinka testified that family counseling was initiated to aid the children in coping with physical abuse suffered at the hand of their original foster mother, but it was never formally added to the case plan. According to Ledvinka, appellant attended only a few of the family counseling sessions.
 {¶ 19} Ledvinka further testified that she provided appellant with urine screens on a weekly basis. Out of 75 screens provided, appellant returned only four or five. Ledvinka also testified that appellant told her that she tested positive for marijuana when she was seven months pregnant with Evelyn. According to Ledvinka, appellant's only explanation was that she had been around people who were smoking marijuana. Ledvinka further testified that when appellant was in the hospital after Evelyn's birth, she told Ledvinka that she had recently smoked marijuana that may have been laced with cocaine.
 {¶ 20} Ledvinka averred that appellant attended about 75 percent of her scheduled visits with the children. Ledvinka opined that appellant does not consistently interact well with the children. According to Ledvinka, appellant does not discipline the children consistently or appropriately, does not control them or redirect them successfully, and does not consistently change diapers. Further, she often focuses her attention solely on Evelyn and does not interact with the other children. Based upon these observations, Ledvinka opined that appellant does not apply the skills she learned in parenting classes.
 {¶ 21} Over objection, Ledvinka opined that appellant was not bonded to the children. In support of her opinion, Ledvinka cited several factors, including: the children did not seem disappointed or upset when appellant did not attend a visit; the children did not seek appellant's comfort or assistance when injured; the children and appellant were not affectionate with one another; and, the children did not spontaneously talk about appellant when they were not with her.
 {¶ 22} Ledvinka further testified that the children appeared to be bonded with the foster family. Ledvinka noted that the children had been with their foster family for over one and one-half years. She further testified that although the foster family had, on occasion, noted problems with one of the children and was undecided about whether they could adopt all five of the children, they had not ruled out that possibility. She further testified that the children are bonded together and have always been in placement together. She also stated that there were no relative placements available and that there were no placement options other than permanent custody that could provide the children with a permanent home. In addition, she testified that the children have no problems that would provide a barrier for finding a permanent adoptive home for them.
 {¶ 23} On May 3, 2002, the magistrate issued two separate decisions which included nearly identical findings of fact and conclusions of law.[2] On May 13, 2002, appellant filed objections to the magistrate's decisions; she filed supplemental objections on August 15, 2002.
 {¶ 24} In two separate decisions filed November 21, 2002,[3] the trial court granted permanent custody of all five children to FCCS. On the same day, the trial court journalized an entry overruling appellant's objections to the magistrate's decision and adopting the magistrate's decision. From this entry, appellant timely appeals, setting forth five assignments of error, as follows:
1. The court's finding that Appellant's children could not be placed with her within a reasonable period of time or that it was not in Appellant's children's best interest to be placed with her because the children have been in placement for over twelve months was against the manifest weight of the evidence.
2. The trial court erred violated [sic] the Swisher childrens [sic] due process rights in overruling Appellant's objection that there was a conflict of interest between the Guardian Ad Litem and the wishes of the Swisher children, and in not taking into account the wishes of some of the Swisher children who wanted to return home to Appellant and in not appointing separate counsel for the Swisher children after evidence was revealed that the [sic] some of the Swisher children wanted to live with Appellant but the Guardian's position was that the children should be placed for adoption.
3. The trial court deprived Appellant of a fair trial and violated Appellant's due process rights in allowing an unlicensed social worker to state an expert opinion that Appellant needed individual psychological counseling and in finding that Appellant's [sic] failed to complete the case plan because she failed to attend individual counseling based when the psychologist's testimony upon which the need for individual counseling was based was stricken from the record.
4. The trial court erred and violated Appellant's due process rights and rights to a fair trial by allowing the caseworker to express an expert opinion that the Swisher children were bonded to the Distelhorst foster family under Evid.R. 702 but in unfairly restricting cross examination of Ledvinka that the Distelhorst family did not want to adopt two of the Swisher children and wanted two of the Swisher children out of their home.
5. The trial court erred and deprived Appellant of due process and a fair trial by not compelling the State to provide Appellant with a copy of the videotape of abuse suffered by the Swisher children while in the Weaver foster home, and in ruling that Appellant's failure to complete family counseling required as a result of severe abuse suffered in the Weaver foster home could be a factor in determining whether permanent custody should be granted by showing that she lacked commitment to the children.
 {¶ 25} By the first assignment of error, appellant contends, in essence, that the weight of the evidence does not support the trial court's decision to overrule her objections to the magistrate's decision and award FCCS permanent custody of the children.
 {¶ 26} Our review of this matter begins by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic' civil right." In re Hayes (1997), 79 Ohio St.3d 46, 48, quoting In re Murray (1990), 52 Ohio St.3d 155, 157. "Permanent termination of parental rights has been described as `the family law equivalent of the death penalty in a criminal case.'" Id. Accordingly, parents must be afforded every procedural and substantive protection the law permits. Id. Because an award of permanent custody is the most drastic disposition available under the law, it is an alternative of last resort and is only justified when it is necessary for the welfare of the children. In re Cunningham (1979), 59 Ohio St.2d 100, 105.
 {¶ 27} In Ohio, there are two methods by which a child may be committed to the permanent custody of a public children services agency. In re Ament (Apr. 23, 2001), Clermont App. No. CA2000-09-076. The agency may file an original complaint alleging that the child is abused, neglected or dependent and request permanent custody as the disposition. R.C. 2151.353(A)(4); R.C. 2151.414. In this circumstance, the trial court may commit a child to the permanent custody of the agency if the court determines, in accordance with R.C. 2151.414(E), that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and, in accordance with R.C. 2151.414(D), that permanent commitment is in the best interest of the child. R.C.2151.353(A)(4).
 {¶ 28} Alternately, the agency may file a motion for permanent custody subsequent to a prior order of temporary custody of the child to the agency. R.C. 2151.413; R.C. 2151.414. R.C. 2151.413(A) governs such motions and provides:
A public services agency or private child placing agency that, pursuant to an order of disposition under division (A)(2) of section 2151.353 of the Revised Code or under any version of section 2151.353 of the Revised Code that existed prior to January 1, 1989, is granted temporary custody of a child who is not abandoned or orphaned may file a motion in the court that made the disposition of the child requesting permanent custody of the child.
* * *
(D)(1) Except as provided in * * * this section, if a child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, the agency with custody shall file a motion requesting permanent custody of the child. * * * For the purposes of this division, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28
of the Revised Code or the date that is sixty days after the removal of the child from home.
 {¶ 29} Pursuant to R.C. 2151.414(B)(1), upon the filing of a motion pursuant to R.C. 2151.413, the court, after a hearing, may grant permanent custody of a child to the agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and that one of the following apply:
(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 30} For purposes of R.C. 2151.414(B)(1), a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to R.C. 2151.28 or the date that is 60 days after the removal of the child from the home.
 {¶ 31} The instant case involves both processes. With regard to Evelyn, FCCS filed an original complaint alleging her to be a dependent child. FCCS requested permanent custody of Evelyn as the disposition. Thus, the trial court's disposition of Evelyn is governed by R.C.2151.353(A)(4).
 {¶ 32} Timothy, Robert, David and Elizabeth were placed in the temporary custody of FCCS in June 1999 pursuant to R.C. 2151.353(A)(2). FCCS filed a motion for permanent custody in July 2000. Thus, the trial court's disposition of Timothy, Robert, David and Elizabeth is governed by R.C. 2151.414(B)(1).
 {¶ 33} Under both R.C. 2151.353(A)(4) and 2151.414(B)(1), the trial court must also determine whether the child's best interest would be served by granting permanent custody to the agency. R.C. 2151.414(D) requires that in determining the best interest of the child, the court must consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) to (11) are applicable.
 {¶ 34} In the instant case, the trial court could terminate appellant's parental rights and grant custody of the children to FCCS only if it found, by clear and convincing evidence, that both prongs of the test set forth in R.C. 2151.353(A)(4), as to Evelyn, and R.C.2151.414(B)(1), regarding Timothy, Robert, David and Elizabeth, were met. "Clear and convincing evidence is the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re Estate of Haynes (1986),25 Ohio St.3d 101, 104.
 {¶ 35} In this case, the trial court concluded that all five of the children cannot or should not be placed with appellant within a reasonable time because appellant had failed to substantially complete her case plan for reunification despite ample opportunities to do so. With regard to Timothy, Robert, David and Elizabeth, the trial court further concluded that the children had been in the temporary custody of FCCS for 12 or more months of a consecutive 22-month period ending on or after March 18, 1999. The trial court further determined that it is in the best interest of all five children to grant permanent custody to FCCS.
 {¶ 36} Upon review of the record, we find that the trial court erred in terminating appellant's parental rights because it failed to comply with R.C. 2151.414(D).
 {¶ 37} As noted previously, in determining the best interest of a child, the trial court must consider all relevant factors, including the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child. At the time of the hearing, Timothy was almost seven years old, Robert was almost six years, David was four and one-half years old, Elizabeth was three and one-half years old, and Evelyn was just over two years old. While Evelyn may have been too young to express opinions about her placement, Timothy, Robert, David and Elizabeth were arguably capable of expressing their wishes.
 {¶ 38} In discussing the children's wishes, the trial court noted that the children did not testify at the hearing and were not interviewed in chambers. The court acknowledged that the guardian ad litem did not specifically address the children's wishes. The court discussed Ledvinka's testimony that Timothy, Robert and David had, in the past, expressed an interest in returning home to appellant, but had not recently done so. The trial court concluded that, based upon this conflicting testimony, it was impossible to determine whether the children genuinely wish to live with appellant. With regard to Evelyn, the court found that she was too young to express her own wishes.
 {¶ 39} In In re Williams (Mar. 20, 2001), Franklin App. No. 00AP-973, this court held that the trial court committed reversible error in granting permanent custody of a child to a public children services agency where the record did not contain reliable evidence about the child's wishes. In Williams, the child's guardian ad litem appeared at the hearing and questioned witnesses, but did not testify about the child's wishes or provide the court with a written report until after judgment was rendered. The child did not testify regarding his own wishes. The child's attorney testified, but did not offer clear evidence about the wishes of the child.
 {¶ 40} As in Williams, the record in the instant case does not contain reliable evidence concerning the children's wishes. None of the children testified at the hearing, nor were they interviewed in chambers. Although the guardian ad litem was present and questioned witnesses, she did not testify. The guardian ad litem's report filed prior to the hearing does not include an expression of the children's wishes. The guardian ad litem's recommendation, filed after the hearing, recommended that permanent custody be granted to FCCS, but does not include a statement regarding the children's wishes. Further, the caseworker's testimony regarding the children's wishes may not be considered. See In re C. M., Summit App. No. 21372, 2003-Ohio-5040, at ¶ 15.
 {¶ 41} Our conclusion concerning the trial court's erroneous failure to consider the children's wishes is dispositive of this appeal and forms the basis for our decision to reverse and remand this case. We need not, therefore, express an opinion concerning the second issue raised in this assignment of error, that is, whether clear and convincing evidence establishes one of the four circumstances set forth in R.C.2151.414(B)(1) with regard to Timothy, Robert, David or Elizabeth, or, regarding Evelyn, whether clear and convincing evidence establishes that she cannot or should not be placed with appellant within a reasonable time. Moreover, we do not opine regarding appellant's additional assignments of error. Accordingly, we overrule as moot the remainder of appellant's first assignment of error as well as the second, third, fourth and fifth assignments of error.
 {¶ 42} In order to provide some guidance for the hearing on remand, however, we make the following observations.
 {¶ 43} When a motion for permanent custody is filed with the court, "[a] written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing" for permanent custody. R.C. 2151.414(C). (Emphasis added.) On remand, the trial court should make certain that the guardian ad litem's report is timely submitted. The court should also make sure that the report contains a recommendation regarding permanent custody, an evaluation of the children's competency and their best interests, and a statement of the children's wishes to the extent they have them, unless the children will be testifying at the hearing or will be interviewed in chambers.
 {¶ 44} Further, should the wishes of the children, as expressed either directly by them or through the guardian ad litem, evidence a strong desire to be reunited with appellant, and should the guardian ad litem's position regarding the best interest of the children conflict with those wishes, the trial court should appoint separate counsel to represent the children.
 {¶ 45} Shortly after the complaints were filed in this case, the court appointed a guardian ad litem for the children as required by Juv.R. 4(B)(2) and (5). Juv.R. 4(C)(1) permits a licensed attorney who is appointed guardian ad litem to serve in a dual capacity as guardian ad litem and counsel for the child "providing no conflict between the roles exists." This rule recognizes the inherent danger of a conflict between these roles, as they serve different functions. In re Stacy S. (1999),136 Ohio App.3d 503, 513. The guardian ad litem's role is to investigate the child's situation and then petition the court to do what the guardian ad litem believes is in the child's best interest. In re Baby Girl Baxter (1985), 17 Ohio St.3d 229, 232. The child's attorney has an ethical duty to zealously represent the child within the bounds of the law and is the spokesperson for the child's wishes. Id.; In re Stacy S. at 514. Thus, a conflict between these roles may arise when the child's wishes differ from what the guardian ad litem believes in is the child's best interest.
 {¶ 46} In order for an attorney to act in both capacities, the court must make a dual appointment. Id. In the instant case, the guardian ad litem is a licensed attorney. However, nothing in the record indicates that the court made a dual appointment. Accordingly, the guardian ad litem serves only as guardian ad litem, not as both guardian ad litem and attorney for the children. Thus, the children have not been represented during the proceedings.
 {¶ 47} In In re Williams, Geauga App. No. 2002-G-2454, 2002-Ohio-6588, at ¶ 26, the Eleventh District Court of Appeals established a procedure to be used by its juvenile courts when deciding whether to appoint counsel for children who express a desire to be reunited with a parent. The court stated:
* * * We are not requiring that legal counsel be appointed every time a child states a desire to remain with a parent. However, when a child consistently expresses a desire to be with a parent, then a juvenile court should investigate, giving due regard to the child's maturity and understanding of the proceedings, and make a ruling about whether an attorney should be appointed to represent the child's interests and expressed wishes.
 {¶ 48} On remand, this procedure should be utilized if the children express a strong desire to be reunified with appellant. If the children express such a desire and this desire is contrary to the guardian ad litem's position, the court should inquire further to determine whether an actual conflict exists between the children's desire and the guardian ad litem's position. In determining whether an actual conflict exists, the court should give due regard to the children's maturity and ability to understand the proceedings. If, after considering those factors, the court determines that an actual conflict exists, the court should appoint counsel to represent the children. In re Ament, supra.
 {¶ 49} Finally, we note that both the magistrate and the trial court labored under the misconception that because permanent custody proceedings seek a change of disposition, they are deemed purely dispositional hearings at which hearsay evidence is admissible. In its decision, the court cites R.C. 2151.35(B)(2)(b), which permits a trial court in a dispositional hearing "to admit any evidence that is material and relevant, including, but not limited to, hearsay, opinion and documentary evidence[.]" However, Juv.R. 34(B)(2) provides: "Except as provided in division (I) of this rule, the court may admit evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence. * * *" Juv.R. 34(I) specifically states that in a hearing on a motion for permanent custody the Rules of Evidence "shall apply." In the instant case, the purpose of the hearing is to determine whether to grant permanent custody of the children to FCCS. As explained in In re Brofford (1992), 83 Ohio App.3d 869, 873, Section5(B), Article IV, Ohio Constitution mandates that the rules of court, promulgated by the Supreme Court of Ohio, "control over inconsistent statutes purporting to govern procedural matters." Thus, Juv.R. 34(B)(2) and (I) require that the Ohio Rules of Evidence be applied to hearings on motions for permanent custody. Thus, on remand, hearsay testimony not subject to a recognized exception to the rule must be excluded from evidence. Evid.R. 802.
 {¶ 50} For the foregoing reasons, appellant's first assignment of error is sustained in part and overruled in part as moot, and her second, third, fourth and fifth assignments of error are overruled as moot. The judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, are reversed, and the matter is remanded for a new hearing, consistent with this decision, regarding the permanent custody of Timothy, Robert, David, Elizabeth and Evelyn Swisher.
Judgments reversed and cases remanded.
BOWMAN and KLATT, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The trial court's orders also terminated the parental rights of the children's father, David Swisher. Mr. Swisher is not a party to this appeal.
[2] One of the magistrate's decisions concerned the permanent custody of Timothy, Robert, David and Elizabeth; the other addressed the permanent custody of Evelyn.
[3] One of the trial court's decisions addressed the permanent custody of Timothy, Robert, David and Elizabeth; the other concerned the permanent custody of Evelyn.